IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH SHAUN TRAYWICK,       )
#177252,                       )
                               )
      Plaintiff,                 )
                               )
v.                             )   CASE NO. 2:16-CV-279-WKW-SMD
                               )
GOVERNOR ROBERT BENTLEY, *et al.*,  )
                               )
      Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the Court on a Complaint filed on April 18, 2016 by Kenneth Shaun Traywick ("Traywick"), an indigent state inmate, challenging numerous actions which occurred while he was an inmate at Draper Correctional Facility ("Draper").  (Doc. 1).  By Order dated April 29, 2016, this Court advised Plaintiff to file an amended complaint and that his case would proceed "only against the defendants named and claims presented in the amended complaint."  (Doc. 2). Thereafter, he filed an Amended Complaint.  (Doc. 10).  Specifically, Traywick alleges that Defendants acted with deliberate indifference when they failed to protect him by "placing him in an institution, and or dorm without personel [sic] from A.D.O.C. to see

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of the Court in the docketing process.

over his safety" and for failing to protect him from the use of excessive force by correctional officers against him on March 14, 2016. *Id.* at 5-6. He also alleges that Defendants violated his constitutional rights when they used excessive force and "picked the plaintiff up by legs and arms and tossed him on his back upon a concrete floor" into a population dorm cell. *Id.* at 6. He further alleges that the defendants retaliated against him by placing him in segregation and ordering the confiscation of his mail for complaining about the "inadequate security and assault." *Id.*

The named defendants are: former Governor Robert Bentley; Jefferson Dunn, Commissioner of ADOC; Edward Ellington, Correctional Warden at Draper; Janet LeJeune, ADOC Constituent Services Officer in Montgomery, Alabama; Tracey Smith, Correctional Captain at Draper; Kahdra Davis, Correctional Lieutenant at Draper; Larry Philyaw, Correctional Lieutenant at Draper; Samuel Johnson, Correctional Officer at Draper; De'Teri Mayes, Correctional Officer at Draper; Deointequan Murray, Correctional Officer at Draper; Kendrick Chappell, Correctional Officer at Draper; and Jackie Pettway, Correctional Sergeant at Draper. Traywick seeks monetary damages from Defendants in their individual and official capacities. (Doc. 10) at 7. Defendants filed a special report (Doc. 35), including supporting evidentiary materials, which addressed the claims presented by Traywick. In their report, Defendants deny they acted with deliberate indifference to Traywick's safety needs, participated in the actions which form the plaintiff's excessive force claim, or retaliated against Plaintiff.

2

After reviewing the special reports and exhibits, the United States Magistrate Judge previously assigned to the case issued an Order (Doc. 36), directing Traywick to file a response to Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. The Court specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 36) at 2. Traywick then filed his Response. (Docs. 39; 40). Pursuant to the Order, the undersigned magistrate judge now treats Defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of Defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). "[A] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Williamson Oil Co., Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-24. The moving party meets his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

When the movant meets its evidentiary burden, the burden shifts to the other party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324. Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593-94 (internal quotation marks omitted). The court will also consider "specific facts" pled in a plaintiff's sworn complaint

when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's

subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc.—and can only grant

summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Sec'y of the Dep't of Children and Family Svs.*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence

7

before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24. A court may grant summary judgment where the pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact. *Id.* To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Traywick's *pro se* status alone does not mandate this Court's disregard of elementary principles of production and proof in a civil case. The undersigned has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the undersigned finds that Traywick has failed to demonstrate any

genuine dispute of material fact that precludes entry of summary judgment in favor of Defendants.

### III. FACTS

In his Amended Complaint, Plaintiff alleges that on March 14, 2016[2] he "requested protective custody in fear for his life due to these conditions of inadequate security." (Doc. 10) at 5. Specifically, he alleged that Governor Bentley, Commissioner Dunn, Warden Ellington, and Janet LeJune, "implemented customs and policies that caused the plaintiff to suffer injury and harm by . . . placing him in an institution, and or dorm without personel [sic] ADOC to see over this safety." *Id.* He further alleged that Lieutenant Kahdra Davis denied his request for protective custody and ordered certain defendant Correctional Officers to "physically place [him] with force in a population dorm." *Id.* at 6.

He then alleged that Lieutenant Philyaw and Sergeant Pettway instructed other officers to carry out this order and officers Johnson, Murray, Mayes and Thorton[3], "picked the plaintiff up by legs and arms and tossed him on his back upon a concrete floor" into a population dorm cell. *Id.* He alleged that as a result of this assault he suffered from back pain and loss of bladder control. *Id.* He also alleged that, in retaliation for his Complaint

---

[2] The plaintiff identified May 14, 2016 as the relevant date in his Complaint. (Doc. 10) at 5. However, in his Response to the Defendants' Special Report, he stated that this was a typographical error and the actual date was March 14, 2016. (Doc. 40) at 1.

[3] The Amended Complaint directed to Officer Thorton was returned as undeliverable on July 25, 2016. The Court ordered the General Counsel of ADOC to advise if she would accept service and represent Officer Thorton. (Doc. 25). ADOC filed a response advising that because Officer Thorton was no longer employed by the ADOC, it would not accept service or represent him. (Doc. 31). Accordingly, Officer Thorton is not a defendant in this action.

concerning this assault and the "inadequate security," he was placed in segregation and Lieutenant Davis "ordered the confiscation of the plaintiff's mail," which Officer Chappell carried out. *Id.*

Defendants deny that Plaintiff was thrown on his back onto a concrete floor in F-Dormitory. Rather, Lt. Philyaw states in his affidavit that, upon finding Plaintiff in the barber shop after he was ordered to relocate from B-Dormitory to F-Dormitory, the facts occurred as follows:

> Inmate Traywick refused to report back to F-Dorm. Sgt. Jackie Pettway along with Officers Samuel Johnson, David Free, and me escorted inmate Traywick back to F-Dorm without incident. Upon arrival at the dorm entrance door, inmate Traywick kneeled down and placed his hands behind his head and stated that he was not going inside the dorm. Officer Johnson instructed inmate Traywick to stand to his feet. Inmate Traywick looked around and observed that Sgt. Pettway, Officer Free and I were present. Officer Johnson touched inmate Traywick on his left shoulder and instructed him again to stand up and go inside F-Dorm. Inmate Traywick complied. Officer Johnson then placed his personal property inside the dorm and secured the gate. During this incident, no force was used on inmate Traywick.

(Doc. 35-6). Although many of the details underlying this action are disputed, there is no dispute that Plaintiff was ordered to relocate himself and his belongings from B-Dormitory to F-Dormitory at Draper[4] and that he refused to follow this direct order on more than one occasion. (Doc. 10) at 5-6; (Doc. 35-2) at 1-2; (Doc. 35-4); (Doc. 35-5); (Doc. 35-11);

---

[4] To be housed in B Dormitory, an inmate must have a "six (6) months clear record (disciplinary or behavior citation)". Because Plaintiff was found guilty of a disciplinary occurring on March 3, 2016, he was moved from B-Dormitory to F-Dormitory. (Doc. 35-5) at 1, (Doc. 35-13) at 21-38.

(Doc. 35-12).  Indeed, Plaintiff does not deny that he refused to report to F-Dormitory and that, upon being escorted to F-Dormitory by correctional officers, he physically resisted placement in his cell.  As a result of disobeying a direct order, Plaintiff was placed in segregation.  *Id.*

On March 16, 2016, two days after the alleged excessive force and following Traywick's placement in segregation, a body chart was conducted on Traywick.  This body chart states "no markings noted on skin."  (Doc. 35-14) at 15.  On the same day, Traywick lodged a sick call request noting "I was thrown down on my back by ADOC officials on 3-14-16.  Back pain is unbearable and have no blatter [sic] control."  (Doc. 35-14) at 14.  On March 18, 2016, Traywick was evaluated by medical staff and treated with ibuprofen.  The nursing encounter report noted that Plaintiff injured his back about five years ago.  *Id.* at 12-13.

On March 22, 2016, another body chart was performed on Plaintiff where he declared "I'm on a hunger strike" and which stated "[n]o wounds noted on assessment."  *Id.* at 11.  Subsequent body charts performed on March 29 and March 30, 2016, also include no references to a back injury or any reports of back pain.  Rather, Plaintiff again reported that he was not eating.  *Id.* at 9-10.  The record reflects that Plaintiff's next complaint of back pain did not occur until April 4, 2016 when he was treated by a nurse practitioner.  *Id.* at 8.

On March 23, 2016, Segregation Officer Kendrick Chappell informed Lieutenant Davis that he had located a suspicious piece of mail in the segregation cubicle.  (Doc. 35-5) at 2; (Doc. 35-10).  The envelope identified James Cooley as the sender and Tabby White as the recipient.  (Doc. 35-5) at 2; (Doc. 35-10); (Doc. 35-13) at 74.  However, inmate Cooley was not assigned to the segregation unit but instead was assigned to B-Dormitory.  (Doc. 35-5) at 2; (Doc. 35-10).  It was determined that Plaintiff was the author of the letter.  (Doc. 35-5) at 2; (Doc. 35-10).  The three-page letter contained in the envelop stated "P.S. I placed someone's name on return address cause I'm afraid they will try and intercept my mail."  (Doc. 35-13) at 73.  The letter also stated that Plaintiff had received a disciplinary action and was planning to file a lawsuit against the ADOC for failing to follow their standard operating procedures.  (Doc. 35-13) at 71-73.  Plaintiff later received a disciplinary action for conspiracy to commit a rule violation but was ultimately found not guilty of that infraction after a full due process hearing.  (Doc. 35-13) at 76-92.

## IV.  DISCUSSION

### A.  Absolute Immunity

To the extent Traywick requests monetary damages from Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are

> two exceptions to this prohibition: where the state has waived its immunity
> or where Congress has abrogated that immunity.  A State's consent to suit
> must be unequivocally expressed in the text of [a] relevant statute.  Waiver
> may not be implied.  Likewise, Congress' intent to abrogate the States'
> immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks

and citations omitted).  Thus, a state official may not be sued in his official capacity unless

the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity,

*see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).  "Neither waiver nor abrogation

applies here.  The Alabama Constitution states that "the State of Alabama shall never be

made a defendant in any court of law or equity."  Ala. Const. Art. I, § 14.  The Supreme

Court has recognized that this prohibits Alabama from waiving its immunity from suit."

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (waiver

of immunity is prohibited by the Alabama Constitution)).  "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v.*

*Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916

F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, Defendants are entitled to

sovereign immunity under the Eleventh Amendment for claims seeking monetary damages

from them in their official capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v.*

*James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their

official capacities are protected under the Eleventh Amendment from suit for damages);

*Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Thus, the undersigned will now address Plaintiff's claims brought against Defendants in their individual capacities.

**B. Respondeat Superior**

To the extent Plaintiff alleges that Bentley, Dunn, Ellington, and LeJune, are liable to him in their supervisory positions based on a theory of *respondeat superior*, those claims must fail.  Indeed, the law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of *respondeat superior* or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Accordingly, the Court concludes that Plaintiff's claims premised upon a theory of *respondeat superior* are due to be dismissed.

Plaintiff also alleged that Bentley, Dunn, Ellington, and LeJune, "implemented customs and policies that caused Plaintiff to suffer injury and harm by . . . placing him in an institution, and or dorm without personel [sic] ADOC to see over this safety."  (Doc. 10) at 5.  Plaintiff, however, fails to allege how he has been injured due to a lack of ADOC personnel.  Rather, his allegations of injury are premised on Defendants' failure to keep him safe from an alleged assault by prison guards which occurred when Plaintiff refused to enter his assigned cell.  Accordingly, the undersigned will turn to Plaintiff's deliberate indifference claims.

14

## C. Deliberate Indifference

### 1. Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the

guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted."  *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).  In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

2.  *Failure to Protect*

      To survive Defendants' motion for summary judgment, Traywick must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner."  *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing

*Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Traywick must then satisfy the subjective component.  This requires Traywick to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id.* at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).  Based a careful review of all the evidence, the undersigned concludes that Plaintiff fails to even allege, much less offer any proof, that Defendants were aware he was at risk for suffering an assault from prison guards.  Rather, Plaintiff claims that he was harmed because there were not sufficient numbers of ADOC personnel assigned to Draper to keep him safe.  Accordingly, the undersigned concludes that summary judgment is due to be granted in favor of Defendants on the claim alleging they acted with deliberate indifference to Traywick's safety.

*3. Excessive Force*

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the

inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in an a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F.

App'x. 828 (11th Cir. 2018).  In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the undersigned recognizes at the outset that there is no dispute Plaintiff refused to follow an order to relocate to F-Dormitory and physically resisted Defendants' efforts to place him in his new cell.  Specifically, the evidence shows that after being ordered to return to F-Dormitory, he was physically escorted to his cell without incident.  (Doc. 35-4; Doc. 35-6).  Upon reaching the cell, Plaintiff "kneeled down and placed his hands behind his head and stated that he was not going inside the dorm." (Doc. 35-6, 35-7).  Plaintiff does not dispute these facts.  Rather, he claims that Defendants "picked the plaintiff up by legs and arms and tossed him on his back upon a concrete floor" into a population dorm cell.  (Doc. 10 at p. 6).  Although Defendants deny any force was used on Plaintiff to secure his placement in his cell in F-Dormitory (Doc. 35-4; Doc. 35-5; Doc. 35-6; Doc. 35-7; Doc. 35-8; Doc. 35-9), the Court must accept Plaintiff's statement as evidence to be considered on a motion for summary judgment.  *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019).  Thus, assuming Defendants used force on Plaintiff as he claims, the undersigned concludes that an inmate's failure to failure to follow orders from correctional officers justifies the use of some force.  Indeed, the Eleventh Circuit has affirmed the "need" for force where the plaintiff first failed to obey an order and then "evaded [the officer's] attempt to get him to comply".  *Miles,* 757 F. App'x at 830 (citing *Bennett,* 898 F.2d at 1533) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance.").

The question then becomes whether the need to ensure Plaintiff's compliance with the order justified the amount of force used.  *Id*.  In this specific instance, the evidence shows that Officer Johnson "touched inmate Traywick on his left shoulder and instructed him again to stand up and go inside F-Dorm."  (Docs. 35-6, 35-7).  Plaintiff failed to comply with this order and was "tossed on his back upon a concrete floor."  (Doc. 10 ) at 6.  In *Miles*, the Eleventh Circuit recognized that the "use of a takedown" which included the prisoner being tackled onto his bed and then onto the floor in his cell was not excessive when the prisoner "failed to obey a jailer's orders."  757 F. App'x at 829-30.  Furthermore, the undersigned notes Plaintiff fails to present any evidence that the force used against him was malicious or sadistic.  Indeed, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm."  *Whitley*, 475 U.S. at 320-21.  Thus, the undersigned concludes that the questions of the need for force and its proportionate use are answered in favor of Defendants.

The undersigned also concludes that the third and fourth *Whitley* factors weigh against Plaintiff.  Although there is no evidence that Plaintiff reacted violently when dealing with officers, it is undisputed that Plaintiff was being relocated from B-Dormitory to F-Dormitory as a result of a disciplinary infraction.  (Doc. 35-5) at 1.  Thus, the undersigned concludes that the officers could reasonably perceive Plaintiff presented some threat.  Finally, the undersigned concludes that officers' use of force was tempered because

24

prior to using any force against Plaintiff, Officer Johnson "touched inmate Traywick on his left shoulder and instructed him again to stand up and go inside F-Dorm." (Docs. 35-6, 35-7).

Finally, the Court considers the extent of the injury suffered by Plaintiff. He alleges that as a result of this assault he suffered from back pain and loss of bladder control. (Doc. 10) at 6. However, the body chart taken on Plaintiff two days after the incident shows no markings on his body. (Doc. 35-14) at 15. Four days after the incident, Traywick was again evaluated by medical staff and treated with ibuprofen. The nursing encounter report noted that Plaintiff had injured his back about five years ago. *Id.* at 12-13. Subsequent body charts performed on Plaintiff on March 22, 29, and 30, include no complaints of back injury or pain, but rather include Plaintiff's reports that he was on a "hunger strike" and would not eat. *Id.* at 9-11. The record reflects that Plaintiff's next complaint of back pain did not occur until April 4, 2016 when he was treated by a nurse practitioner. *Id.* at 8. Accordingly, the undersigned concludes that the medical evidence does not support Plaintiff's allegations of an extensive injury. *Miles,* 757 F. App'x at 830 (finding no "serious injury" where the only treatment was Tylenol). Accordingly, the undersigned concludes that summary judgment is due to be granted on Plaintiff's excessive force claim.

## D. RETALIATION

Plaintiff alleges that Defendants retaliated against him by placing him in segregation and ordering the confiscation of his mail for complaining about the "inadequate security

and assault." (Doc. 10) at 6. To proceed on a claim for retaliation and withstand the entry of summary judgment, the Eleventh Circuit has held that

> an inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Smith*, 532 F.3d at 1278-1279 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287. Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)[5]. Taking Plaintiff's allegations as true, as the Court must

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

on summary judgment, the undersigned concludes Plaintiff fails to state a claim for retaliation based upon the confiscation of his mail from the segregation cubicle, where he was housed, because he has failed to demonstrate that his constitutional rights were violated by Defendants' actions.  Indeed, the United States Supreme Court has held that the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 526.  The undisputed facts show that Chappell noticed some "suspicious mail in the segregation cubicle" as it contained the return address of a prisoner who was housed in B-Dormitory, not segregation.  (Doc. 35-5) at 2; (Doc. 35-10).  Accordingly, the undersigned concludes that, because Plaintiff has failed to demonstrate that Defendants violated his constitutional rights by searching his mail, summary judgment is due to be granted in favor of Defendants on this retaliation claim.

Plaintiff also alleges that Defendants retaliated against him by placing him in segregation.  Taking Plaintiff's allegations as true, the undersigned concludes that he fails to state a claim for retaliation based upon his placement in segregation because he cannot demonstrate that placement in segregation violated his constitutional rights.  *See Mt. Healthy*, 429 U.S. at 287.  Indeed, the Eleventh Circuit has held that there is no constitutional violation where the plaintiff has no "liberty interest in freedom from confinement in administrative segregation." *Al-Amin v. Donald,* 165 F. App'x, 733, 737 (11th Cir. 2006) ("Confinement to administrative segregation, under conditions

substantially similar to those experienced by the general population of the prison, does not implicate liberty interests.")  The undisputed facts show that Plaintiff was placed in segregation for failure to follow a direct order.  (Doc. 10) at 5-6; (Doc. 35-2) at 1-2; (Doc. 35-4); (Doc. 35-5); (Doc. 35-11); (Doc. 35-12).  Moreover, Plaintiff fails to adduce any facts from which this Court could find a violation of his liberty interests.  Accordingly, the undersigned concludes that, because Plaintiff has failed to demonstrate that Defendants violated his constitutional rights by placing him in segregation, summary judgment is due to be granted in favor of Defendants on the retaliation claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the undersigned Magistrate Judge that:

1. Defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

The parties may file objections to this Recommendation **on or before July 10, 2019**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions

of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 26th day of June, 2019.


/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE